*324 The bill states that John Drayton, grand father of the Complainants, being seized and possessed of a large rea! *325 and personal estate, duly executed his last will on the 1st of May, 1779, and amongst other things devised several plantation;:, .slaves, &c. to his youngest, son John, then an infant, and his heirs: Provided, that if his said son John should die. under nge, and without lawful issue, that the lands given him (named Mount Pleasant) and the house in Broad-street, also given to him (but subject to a life estate in testator’s widow) should be sold, and the money equally divided among his four surviving cons,, William Henry, Charles, Glen and Thomas, or the survivors of them. And also, that in case the. said John Drayton, the son, should die under age, and without issue, all his real and personal estate, (not otherwise disponed of by the will) should be divided equally among his surviving brothers. The testator died in the, month of June, Í779, leaving a widow and liut sons, William Henry, Charles, Glen, Thomas and John, and two daughters, Ann and Susannah. That the eldest son William Henry died in the month of October, 1779, intestate, leaving two children, John and Alary, the complainants. That soon after William Henry’s death, his youngest brother, John, died under age. and without issue. The surviving brothers purchased for a valuable consideration all the rights of the widow of the testator in the estate of the testator.— That Charles, Glen, and Thomas Drayton, have sold the estates, devised to the younger brother, John, and have refused to allow complainants any part of the proceeds, ■alleging that they are not entitled to any part thereof, as their father, William Henry, died before (lie, younger brother John. Complainants insist upon their right, and pray that defendants may he obliged to account to them for one fourth of the said estate, and for such other relief as they are entitled to. To this bill the defendants demurred, on the ground that the complainants were not en - titled to any part of the said estates, as their father William Henry had died before the said son John; and the surviving brothers were entitled to tlio whole. So that there being no equity in the bill, they pray the hill may be dismissed.
*326 The defendants also died an answer to the bill, in which they admitted all the facts alleged by the complainants. The defendants admitting all the facts charged in t‘lc complainants’ bill, insist, that upon the death of their elder brother William Henry, and subsequently of their younger brother Join», they were entitled under their father’s will, as survivors, to all the estates devised and bequeathed to John. The defendants admit that they purchased all the widow’s rights in the estate for about 3570'. That believing themselves the owners of the estate of John, they advertised the same for sale, and attempted a sale thereof in February, 1786; hut no real bidders appearing, different tracts of land were knocked down to the defendants severally, at large prices, they really bidding to promote the sale, and not with any view to become purchasers: and not at that time having any idea that complainants had any interest in the said property, they considered it quite immaterial, liow they arranged the business among themselves. But if they had anticipated such a claim, they would either have not put up the property for sale, or would not have bid off the same at high nominal prices: And they insist that it would be very hard on them to hold them to those purchases, made under such circumstances. That defendants sold the. house in Broad-street, believing it to be their property. That they divided the negroes of their brother John’s estate, on the supposition that they belonged to them, and worked them indiscriminately with their own. The defendants answer other points made by the bill, and conclude in the usual manner. The canse came to a hearing, and was argued by Mr. Ford and Mr. Read for complainants, and by Mr. E. Rutledge and general Pinckney and Mr. Pringle for defendants.
Mr. Ford contended that the words in the will gave a tenancy in common, and not a joint tenancy. The words “ equally to be divided” have been uniformly decided to make a tenancy in common, both in wills and deeds. See 1 Vesey, 165. 1 P. Wms. 14, 196, 341. 1 Atk. 493, 4. 2 Atk. 122. 3 Atk. 525. 2 Ves. 252, 7. There was therefore no jus accrescendi in this case. The son John died *327 under age, and without issue. This was the contingency expressly provided for by the will, which directs in case of the death of his son John in his minority, and without issue, that the lauds devised to him should be sold, and the money arising from the sale should be equally divided amongst his four surviving sons, William, Charles, Glen and Thomas, or the survivors of them. And that all the rest of the real and personal property bequeathed to John, should (on his decease as aforesaid) be equally divided amongst his surviving brothers. And so of the house in Broad-street, after the death or marriage of Mrs. R. Drayton, the widow. The word “ surviving” In these clauses, does not appear to have, had reference to the fact of the brothers surviving John, but of their being surviving or living at the testator’s death. A different construction would be to suppose that the testator meant to make a tontine among his sons, and that if all but one of them had died before John, that one surviving should take all, though the other sons might have, left children. This would be an unreasonable construction, and therefore not maintainable; and the property would not be equally divided among his four sons, as the will expresses it. The equality manifestly intended by the testator among his sons, would he defeated. There is no death fixed or refciTed to in this part of the clause, and none in thetestatoi'’s contemplation apparently but his own death, which must be the event to which the word surviving relates. The words to he paid oi equally divided among my four sons above mentioned, to wit: William Henry, Charles, Glen and Thomas, amount to a descriptio person®, of those who are to take. The testator did not mean to cut off the issue of liis children — this is manifest through all the provisions of the will; yet the construction contended for would cut off William Henry’s children, who were alive when testator made his will. Every view of the car® shews that the testator had refex’ence to his own death when he spoke of his surviving sons. This view makes all consistent and reasonable; and would let in the children of any of his four named sons, who survived him, hut died before the sou John. Many cases have been di> *328 -cided where to give effect to the intent, the words of survivorship have been construed to relate to the death of the testator himself. SeeBindon us. Suffolk, 1 P. Wms. decreed by lord ch. Cowper. And though that de~ cisión was rcvei'sed by the house of lords, it has been adhered to by the best judges. Lord Hardwicke, in Hawes vs. Hawes, reported in 1 Vesey, sen. 14, and also in 3 Atkins, 525, approved of the above decision, and agrees with lord eh. Cowper, that the testator’s death was the proper time to fix on in such cases. See Stringer vs. Phillips, 1 Eq. Cas. abr. 292, which was recognised by lord Mansfield in Vere and Alvs. Hill. See too the reasoning in Stones vs. Heurtly. 1 Vesey, 105.
BucitBE book. p. 93.
Mr. Read for complainants enforced the reasoning of Mr. Ford, and quoted 1 Bro. C. C. 240, 3. The interest given to the son John, vested immediately outlie death of testator.
Mr. Pringle, Mr. E. Rutledge, and general Pinckney for defendants contended, that with regard to part of the property devised to the son John, to wit, the house, it did not vest in him till his mother’s death; therefore, the sur-vivorship cannot relate to the death of the testator. They quoted 1 P. Wms. 274. 3 Burr, 1541, 1885. 1 Bro. C. C. 215. Freeman 301, 2. They insisted that the defendants were not hound by the pxirchasc they had made at the sale of the lands of John, for as the executox-s sold without authority, the sales were void. The will directed a sale, hut did not say by whom; yet the executors sold, before the law' of 1787 authorised sales in such cases. They could not give good titles. If the purchasers had been strangers, and bought iu the lands at a low price, the complainants could have prevented the sale taking effect (if their claims are established.) The sale therefore ought not to be binding on the defendants. The court delivered the following decree:
The case before us is upon the construction of the fol clauses, in the will of J. Drayton, grand-lathcx of complainants, and lather of defendants: “Provided nevertheless, that if my said son J. Drayton should die during his minority, or without lawful issue, I do then iv. *329 that case give, &c. &c. the five last mentioned tracts as above described under the name of Mount Pleasant, or Drayton’s Cowpen, I hereby order and provide that the same shall be sold, and the money arising from the dales thereof shall be equally divided in equal shares among my four surviving sons, William Henry, Charles, Glen, and Thomas, or the survivors of them; as also the house in Broad-street, in Charleston aforesaid, in the event of my son John Drayton’s death, under age or without lawful issue; and on the death or marriage of my wife, I hereby provide, order and direct, that the same shall be sold, and the money arising from the sale to be paid in equal proportions to my four surviving sons abovemen-tioned, or the survivors of them.” In the subsequent clause are these words: “But in case my said son John should die without lawful issue, or during his minority, I hereby ox’-der, will and direct, that all his estate, real and personal, shall be divided equally in just and equal shares, amongst his surviving brothers, that is to say, such part of his estate as is not otherwise appropriated and disposed of according to the tenor of this will.” The testator died soon after making his will, and all his sons were then living. William Henry died some months afterwards, and the youngest son John is since' dead under age, and without issue. The law" is now so settled as not to be disputed, that the words equally to be divided in equal shares in a will, make a tenancy in common, though they may be controlled by subsequent restrictive words, more plainly Indicative of testator’s intention. The only question then in this case is, what construction is to be given to the i>es-trictive words, or the survivors of them, in thefii’st clause, and the words surviving brothers in the second; that is, to what time the survivorship shall be limited, whether’the testator’s death, or the death of his son John. In the case of wills, the governing rule of constxmction is the intent of testatox, and that intent must be collected from the whole complexion of the will, ex visceribus testamenti, so' as to leave the mind quite satisfied about what the testator meant, and to construe conformably thei’cto, so far as-it is possible, consistent with the rules of law; and where *330 sentences are doubtful or ambiguous, tlie exposition ought to be made according to the testator’s intent, which lord Coke calls the pole star to guide judges in their determi-na^on* In some cases equity will construe a will against express words, to make it take effect according to testator’s intent, and reject inconsistent or contradictory words» On these principles then we shall proceed to consider the will of testator. We must previously observe, however, that on the careful reading of it, it appears tobe very un-skilfully drawn, by one no way accustomed to technical expressions. Some of the bequests ai’e so awkwardly introduced and blended with others, as leave no room to doubt of his want of professional assistance, and that it was done when he was in extremis, inops concilii; for in the devise to his son John, after enumerating the lands given to his wife, which he thereby gave to bis son on a certain contingency, he introduces a bequest to his wife of the house in Broad-street for life, provided she continue his widow so long. That the testator did not intend to make an equal distribution of bis estate, cannot be denied, because it is evident on a perusal of his will, that lie gave more to his youngest son than to any of bis other children; and to tlie youngest sons of bis first and second marriages, more than ibe eldest sons of those marriages respectively; and there can be no doubt that a testator may make such a capricious disposition of his estate as he shall think proper — there is no law to control him. In this will it is to be remarked that the testator in his bequests to the four eldest sons, has given them tlie absolute property in the estate without any limitation over; but in the devises to John, he has limited over the whole property, particular parts of it to his sons Charles and Thomas, and the rest of his four surviving sons by name, or the survivors; and in the second clause to his surviving brothers; which evidently shews that the testator had an idea it was probable they would survive his son John. It was certainly his intention that his four sons should-have equally the money to arise-from the sale of Mount Pleasant plantation, or the house in town, or why be so particular as to name them? and though testator has made use of the words his surviving *331 brothers in the last bequest, we think that ought not to vary the construction, but that it should be the same, the intention appearing to be precisely the same. As the testator has fixed no time when the survivorship is to take place, we are of opinion from the authority of former adjudications, that it must be confined to the time of his death; for, supposing it had so happened that three of the four sons had died before John, what would have become of the estate? The survivor could not have taken, because it is limited to the survivors: One only then having survived, he could not be entitled within the words; and certainly not the intention of the testator. It must; then have been considered as a lapsed legacy, and been distributed as a part of his estate, undisposed of by bis will, which he never intended. The case of Stones and Heurtly, 1 Vesey, 165, comes nearest to this. That indeed respected lands; this is to be considered only as personal estate, as the testator leaves orders, that to be converted into money: In that case however,the court determined that it was a tenancy in common, and the three children having survived the testator, the representatives of the one who died af-terwards should take the share of the mother, and restrained the words survivors or survivor to the death of testator. Hose on demise of Vere vs. Hill, 3 Burr, 1841, is grounded on the above case, and that of Stranger v. Phillips. So in the case of executors of Elliott vs. executors of Smith, determined in this court, the grand children were let in for a share of the residuary estate, although the will expressly directed that if any or either of the children died before the time appointed for the delivery of the portions, it should go to the surviving children, shai*e and share alike; thereby confining the survivorship to the testator’s death. And the case of Sealy vs. Laurens was afterwards determined on the same principles. With regard to the house in Broad-street, the construction must be the same as on the other parts of the estate bequeathed to John; but testator’s wife not having married, and being still living, tlie decree cannot have any effect till that event. Overrule the demurrer, and defendants ordered to answer,